O'Connor, C.J.
*1266 {¶ 1} Nicholas Iarocci, the Ashtabula County Prosecuting Attorney, has filed an affidavit with the clerk of this court pursuant to R.C. 2701.03 seeking to disqualify Judge Gary Yost from presiding over any further proceedings in the above-referenced criminal case involving defendant Jamie Lynn Clay.
{¶ 2} As part of a separate case, Ms. Clay was admitted into the Ashtabula County Drug Court Program in June 2017. Judge Yost is the presiding judge of the drug court and, as a result, regularly meets with Ms. Clay regarding her compliance with program requirements. In October 2017, Ms. Clay was indicted in the underlying case, which includes a charge of involuntary manslaughter. After the new case was assigned to Judge Yost, Mr. Iarocci filed this affidavit of disqualification to remove the judge from the new case. An appearance of bias exists, Mr. Iarocci avers, because (1) after the new charges were filed against Ms. Clay, Judge Yost unilaterally decided that she could continue in drug court and (2) as part of Ms. Clay's participation in drug court, the *383 judge will continue to meet with her on a weekly basis.
{¶ 3} Judge Yost has responded in writing to the affidavit. He acknowledges that after Ms. Clay was indicted on the new charges, he advised her that she could continue in drug court but, depending on the outcome of the new case, she might not be able to complete it. According to Judge Yost, previous drug-court participants were not terminated from the program solely because new charges were filed against them. The judge further acknowledges that in his role as drug-court *1267 judge, he regularly meets with Ms. Clay to monitor her compliance with the program. The judge does not believe, however, that his overseeing of Ms. Clay's drug-court participation creates bias or an appearance of bias in the new case.
{¶ 4} The Code of Judicial Conduct contemplates that a judge who administers a specialized docket assumes a more interactive role with parties, treatment providers, probation officers, social workers, and others. See Jud.Cond.R. 2.9, Comment 4A. Accordingly, the fact that a judge may have engaged in ex parte communications in a specialized-docket program-even if those communications would not have been appropriate in the more traditional judicial setting-does not automatically lead to the judge's disqualification from other proceedings involving the same parties. See In re Disqualification of Giesler , 135 Ohio St.3d 1201, 2011-Ohio-7083, 985 N.E.2d 486, ¶ 9. Similarly, the fact that a judge may have been exposed to certain information about a participant in a specialized-docket program-information that the judge may not have learned in the more traditional judicial forum-does not automatically require the judge's disqualification from other matters involving the participant. See In re Disqualification of Blanchard , 150 Ohio St.3d 1260, 2017-Ohio-5543, 80 N.E.3d 504. In these situations, the ability of a judge to preside fairly and impartially in a particular matter "must be analyzed on a case-by-case basis." Id. at ¶ 5.
{¶ 5} Under the same logic, the fact that Judge Yost is currently presiding over Ms. Clay's drug-court proceedings does not, in and of itself, require his disqualification from all other matters involving Ms. Clay, including the underlying case. Rather, the issue of whether an appearance of bias exists "must be analyzed on a case-by-case basis." Id. Upon review of the record here, Mr. Iarocci has not established that an objective observer would harbor serious doubts about Judge Yost's impartiality based on his interactions with Ms. Clay in drug court. See In re Disqualification of Lewis , 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (setting forth the proper test for disqualifying a judge based on an appearance of impropriety).
{¶ 6} "In general, what a judge learns in his official judicial capacity in another proceeding is not the kind of information that leads to disqualification." Blanchard at ¶ 4. "Just as '[a] judge is presumed to follow the law and not to be biased,' In re Disqualification of George , 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5, a judge is presumed to be capable of separating what may properly be considered from what may not be considered." (Brackets added in Basinger . ) In re Disqualification of Basinger , 135 Ohio St.3d 1293, 2013-Ohio-1613, 987 N.E.2d 687, ¶ 5. Here, there is no evidence that Judge Yost gained personal knowledge of disputed facts about the underlying case while administering Ms. Clay's drug-court case. Nor is there sufficient evidence to conclude that the judge's impartiality might reasonably be questioned based on his role and duties as drug-court *1268 judge. For example, there is no suggestion that Judge Yost *384 has developed any sort of interest or stake in Ms. Clay's successful completion of drug court that would render him incapable of presiding over the new case with the necessary level of detachment or neutrality. Mr. Iarocci appears to suggest that Judge Yost's decision allowing Ms. Clay to continue in drug court telegraphed the judge's partiality. The judge states, however, that he merely advised Ms. Clay that she could continue in the program during the pendency of the new case but, depending on the outcome, she might not be able to complete it. Without more, Mr. Iarocci has not set forth sufficiently compelling evidence to overcome the presumption that Judge Yost will be fair and impartial in the underlying matter.
{¶ 7} The affidavit of disqualification is therefore denied. The new case may proceed before Judge Yost.